FILED
JANUARY 16, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Case 1:08-cv-00369   Document 1   Filed 01/16/2008   Page 1 of 17

JN.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MIDDLEBY MARSHALL INC., ) <br> a Delaware corporation, and ) <br> G.S. BLODGETT CORPORATION, ) <br> a Vermont corporation, ) <br>  ) <br> Plaintiffs, ) <br>  ) <br> v. ) <br>  ) <br> PIZZA EQUIPMENT SUPPLY, INC., ) <br> a North Carolina corporation, ) <br>  ) <br> Defendant. ) | Civil Action No. _____ <br><br> **08 C 369** <br><br> **JUDGE CASTILLO** <br> **MAGISTRATE JUDGE BROWN** <br><br> **JURY DEMANDED** |

## COMPLAINT

Plaintiffs, Middleby Marshall Inc. and G.S. Blodgett Corporation, by their attorneys, as and for their complaint against Defendant, Pizza Equipment Supply, Inc., state as follows:

## PARTIES

1.  Plaintiff Middleby Marshall Inc. ("Middleby") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 1400 Toastmaster Drive, Elgin, Illinois 60120. Middleby is a wholly-owned subsidiary and operating company of The Middleby Corporation.

2.  Plaintiff G.S. Blodgett Corporation ("Blodgett") is a corporation organized and existing under the laws of the State of Vermont, with its principal place of business at 44 Lakeside Avenue, Burlington, Vermont 05401. Like Middleby, Blodgett is a wholly-owned subsidiary and operating company of The Middleby Corporation.

3.	On information and belief, Defendant Pizza Equipment Supply, Inc. ("PESI") is a corporation organized and existing under the laws of the State of North Carolina, with its principal place of business at 1437 East Franklin Boulevard, Gastonia, North Carolina 28054.

## JURISDICTION

4.	This is an action for injunctive relief and damages regarding PESI's acts of trademark infringement, trademark counterfeiting, trademark dilution, unfair competition, and deceptive trade practices.  This action arises under the Lanham Act of 1946, 15 U.S.C. § 1051, *et seq.*; the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS § 510, *et seq.*; and Illinois common law.  The Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1338(a) and 1367.

5.	Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because PESI's infringing goods have been sold in Illinois, PESI's infringing goods can be ordered in this judicial district from PESI's interactive web site and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

## BACKGROUND FACTS

6.	The Middleby Corporation is a worldwide manufacturer, distributor and provider of premium goods and services for the food service equipment industry.  The Middleby Corporation develops, manufactures, markets and services a broad line of commercial food cooking, preparation and processing equipment.  Middleby and Blodgett are leading manufacturers of commercial cooking equipment, including conveyor ovens used to cook pizzas and other food items.  Typical customers for Plaintiffs' products are restaurants, fast-food chains, hotels, institutions and small businesses.

7. On December 26, 1978, Middleby registered on the Principal Register of the United States Patent and Trademark Office ("PTO") U.S. Trademark Registration No. 1,109,952 for the mark MIDDLEBY-MARSHALL for ovens for baking food ("the Middleby Registration"). The MIDDLEBY-MARSHALL trademark ("the Middleby Mark") has been in continuous use in interstate commerce by Middleby and its predecessors since at least as early as 1890. The Middleby Registration is in full force and effect and is incontestable pursuant to the provisions of 15 U.S.C. § 1065. Middleby uses the trademark registration symbol "®" in association with the Middleby Mark. A true and correct copy of the registration certificate for the Middleby Mark is attached as Exhibit A and is incorporated herein by reference.

8. On November 4, 1941, Blodgett registered on the PTO Principal Register U.S. Trademark Registration No. 391,399 for the mark BLODGETT for baking and roasting ovens ("the Blodgett Registration"). The BLODGETT trademark ("the Blodgett Mark") has been in continuous use in interstate commerce by Blodgett and its predecessors since at least as early as 1850. The Blodgett Registration is in full force and effect and is incontestable pursuant to the provisions of 15 U.S.C. § 1065. Blodgett uses the trademark registration symbol "®" in association with the Blodgett Mark. A true and correct copy of the registration certificate for the Blodgett Mark is attached as Exhibit B and is incorporated herein by reference.

9. Collectively, the Middleby Mark, Blodgett Mark and Middleby and Blodgett common law trademarks and trade names are referred to herein as "the Marks" or "Plaintiffs' Marks."

10. For over 100 years, Plaintiffs and their predecessors-in-interest have expended substantial time, effort and money in advertising, promoting and marketing goods and services sold under or in connection with the Marks, throughout the United States and in foreign

countries. In addition, laudatory articles about Plaintiffs' products have appeared in widely and/or nationally distributed magazines and newspapers and Plaintiffs and their products have won numerous industry awards. As a result of such extensive use and advertising, the Marks have acquired valuable goodwill and are recognized as identifying goods and services provided exclusively by Plaintiffs. The Marks and the goodwill represented thereby are valuable and important assets of Plaintiffs.

11. Middleby has sold in excess of 125,000 of its commercial ovens under the Middleby Mark and Blodgett has sold in excess of 1,000,000 of its commercial ovens under the Blodgett Mark, in addition to the millions of units of other commercial cooking products sold under their Marks. Each Plaintiff has individually earned in excess of $1 billion in sales revenue for commercial ovens sold under Plaintiffs' Marks. As a result, Plaintiffs' Marks are famous among the purchasing public and trade as denoting Plaintiffs as the source of high-quality commercial food cooking, preparation and processing equipment, including conveyor ovens.

12. As a result of the widespread and continuous use and promotion of Plaintiffs' Marks, the Marks have achieved fame and distinctiveness, are widely known and recognized as source-identifiers for a variety of goods originating with Plaintiffs and serve to distinguish those goods from those of others. In addition, Plaintiffs' Marks are and have become famous and well-known and Plaintiffs are famous and well-known as leaders in the food service equipment industry and leading sellers of such products.

13. On information and belief, PESI rebuilds commercial ovens under a process it advertises as "refurbishing." In its advertising, PESI describes its "refurbishing" as "replac[ing] everything that makes an oven operate." PESI describes its refurbished ovens as "like new." See Exhibit C, attached hereto and incorporated herein by reference.

14. On information and belief, PESI obtains used Middleby and Blodgett ovens and rebuilds them by replacing important and essential OEM components with aftermarket components that have not been approved or authorized by Middleby or Blodgett. Such important components directly affect the performance, safety and efficiency of the operation of the rebuilt ovens and include temperature regulating controls, cooling fans, gas piping assemblies, main gas valves, modulating gas valves, air switches and speed controls.

15. As a result of PESI's actions in replacing critical and essential OEM components with unauthorized components, the resulting rebuilt ovens are new and different products from those manufactured by Middleby and Blodgett. PESI's rebuilding activities materially alter the basic performance and reliability of the ovens, affecting critical operational and safety aspects and going far beyond merely refurbishing or restoring the ovens to their original condition. Therefore, PESI's attempt to disclaim its actions with disclaimer stickers on the rebuilt products and notices on its web site that the products have merely been "refurbished" are misleading and deceptive. Those disclaimers do not adequately inform the purchasing public, trade and governmental authorities specifically what parts were repaired or replaced or what operating specifications have been changed.

16. On information and belief, PESI does not identify to its customers what components have been replaced in rebuilt Middleby and Blodgett ovens, does not provide to its customers the changed operating specifications for the replaced components or the rebuilt ovens, and does not inform its customers that Middleby and Blodgett have neither approved nor authorized the replaced components. All of this missing information telling purchasers how the ovens have been altered by PESI is critical to the safe and effective operation of the rebuilt

ovens. For an example of PESI's advertising for rebuilt Middleby ovens, see Exhibit D, attached hereto and incorporated herein by reference.

17. Despite significant alterations to the ovens, PESI's rebuilt Middleby and Blodgett ovens continue to display Plaintiffs' Marks, as well as Middleby's common law trademarks represented by its "350" and "360" model numbers, without authorization from Middleby and Blodgett.

18. Indeed, PESI has printed and attached to rebuilt Middleby and Blodgett ovens counterfeit nameplates that display the Middleby and Blodgett Marks and numerous invalid certification marks.

19. Middleby and Blodgett original ovens have been certified by numerous certifying agencies, including Underwriters Laboratories, Intertek ETL Semko, The American Gas Association and National Sanitation Foundation. Middleby and Blodgett are entitled to display a number of such certification marks on their original ovens. The trade, the public and governmental authorities, such as local health inspectors, rely on those certification marks as proof that Middleby and Blodgett ovens meet certain performance, efficiency and safety standards.

20. PESI's rebuilt ovens are sold with the original certification marks from these third-party certifying agencies. The nontransferable certification marks were earned by Middleby and Blodgett for their ovens as originally manufactured and tested by the certifiers. On information and belief, PESI's rebuilt ovens have not been tested and re-certified by these agencies and, therefore, the certification marks are no longer valid. On information and belief, PESI's rebuilt Middleby and Blodgett ovens do not meet the original, as-manufactured operating specifications, efficiencies and safety standards and would not qualify for certification by those

certifying agencies. PESI does not notify its customers that the certification marks displayed on the ovens are no longer valid.

21. On information and belief, PESI's actions in counterfeiting Plaintiffs' nameplates and unauthorized use of their Marks in selling rebuilt Middleby and Blodgett ovens constitute a deliberate effort to mislead the purchasing public, the trade and governmental authorities by creating the appearance that PESI's rebuilt ovens are of the same quality and have the same characteristics and operating specifications as the originally manufactured Middleby and Blodgett ovens and are certified by third parties to have such quality and characteristics.

22. PESI's marketing and sale in interstate commerce and in commerce between the United States and foreign countries of rebuilt products with the original Middleby and Blodgett nameplates or counterfeit nameplates is with knowledge and notice of the longstanding use by Middleby and Blodgett of the Marks and that the rebuilt ovens have been altered by replacement of essential OEM components with components that are not approved or authorized by Middleby or Blodgett.

23. PESI's sale of counterfeit products under the Middleby and Blodgett Marks without adequate warning labels identifying the new operating specifications and the components that have been changed and without other safety instructions subjects Middleby and Blodgett to potential product liability or other claims arising from the use or misuse of these products, resulting in immediate and irreparable harm to Middleby and Blodgett.

24. Further, the differences between the original components and the unauthorized components used in the rebuilt ovens could result in malfunction, further increasing the risk to the trade and public and Plaintiffs' exposure to liability and damage to their reputations for high quality products. In addition, the trade, public and governmental authorities are impacted as they

are being deceived about the quality and characteristics of PESI's rebuilt products. The lack of adequate warning labels and other safety instructions with PESI's products therefore raises serious public safety issues.

25. PESI's use of the Middleby and Blodgett Marks and invalid certification marks on the rebuilt ovens is likely to cause confusion, mistake and deception in the purchasing public and trade and among governmental authorities and is likely to lead actual and prospective purchasers to believe the PESI rebuilt ovens are approved by, sponsored by, or associated with Plaintiffs, are genuine products originating with Plaintiffs and meet the standards of the identified certifying agencies. Actual confusion as to the source of the rebuilt ovens has already occurred and has caused and is likely to continue to cause Plaintiffs damage, including irreparable harm to their reputation and the goodwill associated with the Marks, for which monetary damages are not adequate or readily calculable.

26. PESI also uses Plaintiffs' Marks in its advertising and promotional materials and on its web site in a manner that is likely to cause confusion, mistake and deception in the purchasing public and trade and to lead actual and prospective purchasers to believe the PESI rebuilt ovens and aftermarket parts are approved by, sponsored by or associated with Plaintiffs.

27. Plaintiffs have lost control over their reputations and the goodwill associated with the Marks because there is no way that Plaintiffs can know of dissatisfied PESI customers who mistakenly believe that: (a) the rebuilt ovens are approved by, sponsored by or associated with Plaintiffs, (b) the ovens still meet their original operating specifications and characteristics, and (c) the ovens remain certified by the agencies listed on them.

28. Despite Plaintiffs' demands that PESI cease its above-described unlawful activities, PESI has continued its complained-of conduct. PESI's aforesaid conduct is willful and deliberate and will continue unless enjoined by this Court.

## COUNT I

### Federal Trademark Infringement
### Under Lanham Act §§32-36, 15 U.S.C. §§ 1114-1118

29. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 28, inclusive, as if fully set forth herein.

30. PESI's aforesaid acts, practices and conduct constitute a use in interstate commerce of a reproduction, counterfeit, copy or colorable imitation of Plaintiffs' Marks and third-party certification marks, and PESI's sale, offering for sale, distribution or advertising of such goods is likely to cause confusion or mistake or to deceive the public, in violation of 15 U.S.C. § 1114(1).

31. PESI's acts were performed willfully, with knowledge that they were likely to cause confusion, mistake and deception on the part of purchasers of the rebuilt ovens.

32. As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiffs have been or are likely to be substantially injured in their business, resulting in lost revenues and profits, and diminished goodwill and reputation.

33. PESI's continued use of Plaintiffs' Marks and invalid third-party certification marks on the rebuilt ovens irreparably harms Plaintiffs.

34. Plaintiffs have no adequate remedy at law because their aforesaid registered Marks are unique and represent to the public Plaintiffs' identity, reputation and goodwill, such that damages alone cannot fully compensate Plaintiffs for PESI's misconduct.

35. Unless enjoined by the Court, PESI will continue to offer and sell rebuilt ovens bearing Plaintiffs' Marks and invalid third-party certification marks, resulting in irreparable injury to Plaintiffs. This threat of future injury to Plaintiffs' business, identity, goodwill and reputation requires injunctive relief to stop PESI from offering and providing counterfeit goods, to prevent PESI's use and infringement of Plaintiffs' Marks and invalid third-party certification marks, and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT II

### Unfair Competition Under Lanham Act §43(a), 15 U.S.C. §1125(a)

36. Plaintiffs reallege and incorporate by reference paragraphs 1 through 28, inclusive, as if fully set forth herein.

37. PESI's aforesaid willful acts, practices and conduct constitute unfair competition, false designation, description or representation, false advertising, fraud, or unfair or deceptive trade practices in that they are likely to cause confusion and mistake by the trade, the public and government authorities all in violation of 15 U.S.C. § 1125(a).

38. As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiffs have been or are likely to be substantially injured in their business, resulting in lost revenues and profits, and diminished goodwill and reputation.

39. Plaintiffs have no adequate remedy at law because the Marks are unique and represent to the public the identity, reputation and goodwill of Plaintiffs, such that damages alone cannot fully compensate Plaintiffs for PESI's misconduct.

40. PESI's continued use of Plaintiffs' Marks and invalid third-party certification marks in connection with rebuilt ovens irreparably harms Plaintiffs.

41. Unless enjoined by the Court, PESI will continue to offer and provide rebuilt ovens bearing Plaintiffs' Marks and invalid third-party certification marks without adequate warning labels or safety and operating instructions, will continue to make false descriptions and designations, will unfairly compete and will infringe on Plaintiffs' registered and common law Marks to Plaintiffs' irreparable injury.  This threat of injury to the public and to Plaintiffs' business, identity, goodwill, and reputation requires injunctive relief to stop PESI from offering and selling counterfeit products and products without adequate warning labels or safety and operating instructions, to prevent PESI's false descriptions, designations, representations and infringement, and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT III

### Federal Trademark Dilution
### Under Lanham Act §43(c), 15 U.S.C. §1125(c)

42. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 28, inclusive, as if fully set forth herein.

43. Plaintiffs' Marks are distinctive and have become famous marks within the meaning of 15 U.S.C. §1125(c) due to Plaintiffs' continuous and exclusive use of their Marks for over 100 years, and the marks were famous prior to PESI's acts complained of herein.

44. PESI's aforesaid acts, practices and conduct have harmed and are likely to continue to harm the reputation of Plaintiffs' famous marks and are likely to cause dilution by impairing the distinctiveness of Plaintiffs' famous Marks, in violation of 15 U.S.C. § 1125(c).

45. PESI willfully intended to create an association with Plaintiffs' famous Marks when selling the rebuilt ovens bearing Plaintiffs' famous Marks.

46. As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiffs have been and are likely to continue to be substantially injured in their business, resulting in lost revenues and profits, and diminished goodwill and reputation.

47. Plaintiffs have no adequate remedy at law because their Marks are unique and represent to the public the identity, reputation and goodwill of Plaintiffs, such that damages alone cannot fully compensate Plaintiffs for PESI's misconduct.

48. PESI's continued use of the Plaintiffs' Marks in connection with rebuilt ovens irreparably harms Plaintiffs.

49. Unless enjoined by the Court, PESI will continue to offer and sell rebuilt ovens bearing the Plaintiffs' Marks and to blur and tarnish the distinctive quality of Plaintiffs' Marks to Plaintiffs' irreparable injury. This threat of future injury to the public and to Plaintiffs' business, identity, goodwill, and reputation requires injunctive relief to stop PESI from offering and selling its counterfeit goods bearing Plaintiffs' Marks, to prevent PESI's dilution, and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT IV

### Illinois Common Law Trademark Infringement and Unfair Competition

50. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 28, inclusive, as if fully set forth herein.

51. PESI's aforesaid acts, practices and conduct have caused or are likely to cause confusion and mistake by the trade, the public and governmental authorities and constitute under Illinois common law unfair competition, trademark infringement and trade name infringement.

52. As a direct and proximate result of the aforesaid actual and threatened acts, practices and conduct, Plaintiffs have been or are likely to be substantially injured in their business, resulting in lost revenues and profits, and diminished goodwill and reputation.

53. PESI's continued use of Plaintiffs' Marks and invalid third-party certification marks in connection with PESI's rebuilt ovens irreparably harms Plaintiffs.

54. Plaintiffs have no adequate remedy at law in that Plaintiffs' Marks are unique and represent to the public Plaintiffs' identity, reputation and goodwill, and damages alone cannot fully compensate Plaintiffs for PESI's misconduct.

55. Unless enjoined by the Court, PESI will continue to offer and sell counterfeit goods bearing Plaintiffs' Marks and invalid third-party certification marks to cause confusion and to otherwise unfairly compete, to Plaintiffs' irreparable injury. This threat of injury to the public and to Plaintiffs' business, identity, goodwill, and reputation requires injunctive relief to stop PESI from offering and selling counterfeit products bearing Plaintiffs' Marks, to prevent PESI's unfair competition, and to ameliorate and mitigate Plaintiffs' injuries.

## COUNT V

### Deceptive Trade Practices in Violation of 815 ILCS § 510

56. Plaintiffs reallege and incorporate by reference Paragraphs 1 through 28, inclusive, as if fully set forth herein.

57. PESI's aforesaid acts, practices and conduct constitute deceptive trade practices in violation of 815 ILCS § 510.

58. PESI's aforesaid acts, practices and conduct have caused and are likely to continue to cause injury to Plaintiffs and to the trade and public in violation of 815 ILCS § 510.

59. PESI willfully intended to trade on Plaintiffs' reputation when selling rebuilt ovens bearing Plaintiffs' Marks and third-party certification marks earned by Plaintiffs.

60. As a direct and proximate result of the aforesaid acts, practices and conduct, Plaintiffs have been and are likely to continue to be substantially injured in their business, resulting in lost revenues and profits, and diminished goodwill and reputation. Further, PESI's deceptive trade practices are likely to harm the trade, the public and governmental authorities who rely on PESI's deceptive statements about the quality and characteristics of its rebuilt ovens and the use of invalid third-party certification marks.

61. Plaintiffs have no adequate remedy at law because the Marks are unique and represent to the public the identity, reputation and goodwill of Plaintiffs, such that damages alone cannot fully compensate Plaintiffs for PESI's misconduct.

62. PESI's continued use of the Plaintiffs' Marks and invalid third-party certification marks in connection with the rebuilt ovens irreparably harms Plaintiffs, the trade and the public.

63. Unless enjoined by the Court, PESI will continue to offer and sell ovens in a deceptive manner, to Plaintiffs' irreparable injury. This threat of injury to the public and to Plaintiffs' business, identity, goodwill, and reputation requires injunctive relief to stop PESI from offering and selling its counterfeit goods bearing Plaintiffs' Marks and third-party certification marks, to prevent PESI's deceptive practices and to ameliorate and mitigate Plaintiffs' and the public's injuries.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for the following relief:

1. That the Court find, adjudge and decree that PESI has violated laws of the United States and Illinois as set forth herein.

2.  Immediate seizure of all counterfeit or infringing PESI rebuilt ovens and components therefor, all packaging, labeling, and promotional material therefor in PESI's possession and all records documenting the manufacture and sale of such goods, including a list of customers to whom such goods have been sold, and the identification of the goods and the replaced components, pursuant to 15 U.S.C. §1116(d).

3.  A permanent injunction enjoining PESI, its agents, affiliates, servants and employees, and those persons in active concert or participation with it, from:

   a.  Using Plaintiffs' Marks in connection with the manufacture, sale, offer for sale or promotion of unauthorized, counterfeit or adulterated ovens, not originating with or authorized entirely by Plaintiffs or using any other designation that is confusingly similar to Plaintiffs' Marks, alone or in combination with any other words or symbols;

   b.  Using any trademark, service mark or trade name that is confusingly similar to Plaintiffs' Marks in connection with unauthorized goods or services;

   c.  Doing any other acts likely to cause confusion, or deception or injury to Plaintiffs' business reputation or the reputation of Plaintiffs' Marks or Plaintiffs' goods or services;

   d.  Unfairly competing with Plaintiffs;

   e.  Repackaging or relabeling any of Plaintiffs' goods in a deceptive or misleading way;

   f.  Passing off any of PESI's goods or services as those of Plaintiffs;

   g.  Diluting the distinctive quality of Plaintiffs' Marks;

   h.  Doing any acts likely to cause confusion or mistake or deception as to the source or sponsorship of PESI's goods or services;

    i.  Doing any acts likely to cause confusion or mistake or deception as to PESI's affiliation, connection or association with Plaintiffs; and

    j.  Improperly displaying third-party certification marks.

  4.  That PESI be directed to file with the Court and to serve on Plaintiffs within ten (10) days after entry of any injunction order, a written report, under oath, setting forth the manner in which it has complied with the injunction order.

  5.  That, within five (5) days after the entry of any injunction order, PESI be required to deliver to Plaintiffs or to the Court for destruction, all products, devices, packaging, literature, advertising, and any other material bearing the infringing Marks, all at PESI's cost.

  6.  That PESI be ordered to render an accounting to Plaintiffs of the gross receipts of its sales of ovens bearing Plaintiffs' Marks for each month from the date on which the Court finds that PESI began its infringing conduct to the date PESI ceases such conduct.

  7.  An award of statutory damages pursuant to 15 U.S.C. §1117(c)(2).

  8.  An order that Plaintiffs recover the damages to their goodwill, business and Marks resulting from PESI's conduct and further recover, as damages, an award of PESI's profits from the sale of services and products in connection with the rebuilt ovens, and an order that such monetary awards be trebled.

  9.  Punitive and exemplary damages as the Court may deem just and appropriate.

  10.  An order that Plaintiffs recover from PESI all reasonable attorneys' fees, expenses and costs incurred by Plaintiffs in this action pursuant to 15 U.S.C. §1117(b).

11.  Such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

Plaintiffs demand trial by jury on all matters and issues so triable.

Dated this 16th day of January, 2008.        Respectfully submitted,

                By: s/ Charles A. Laff
                Charles A. Laff (#01558153)
                (calaff@michaelbest.com)
                Martin L. Stern (#02727307)
                (mlstern@ michaelbest.com)
                Judith L. Grubner (#06180359)
                (jlgrubner@ michaelbest.com)
                Marshall J. Schmitt (#06184893)
                (mjschmitt@ michaelbest.com)
                MICHAEL BEST & FRIEDRICH LLP
                180 North Stetson Avenue
                Suite 2000
                Chicago, IL  60601-6710
                (312) 222-0800

                Attorneys for Plaintiffs
                Middleby Marshall Inc. and
                G.S. Blodgett Corporation